IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DOUGLAS BRIAN MITCHELL,         )
                                )
              Plaintiff,        )
                                )
          v.                    )          1:15CV00299
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
              Defendant.        )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Douglas Brian Mitchell, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")) and both parties have moved for judgment (Docket Entries 10, 12); see also Docket Entries 11 (Plaintiff's Memorandum), 13 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI (Tr. 193-205), alleging disability onset dates of September 30, 2008 (see Tr. 193), and March 1, 2009 (see Tr. 200), respectively. Upon denial

of those applications initially (Tr. 74-99, 131-38) and on reconsideration (Tr. 100-30, 143-58), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 159-60). Prior to the hearing, Plaintiff amended his onset date to March 9, 2011, the date of a consultative mental examination. (See Tr. 27, 32.) Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 28-56.) The ALJ thereafter ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 6-20.) The Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 9, 2011, the amended alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: post-traumatic stress disorder (PTSD)/anxiety; schizophrenia; obsessive-compulsive/personality disorder; history of polysubstance dependence; hepatitis C; sleep apnea; obesity; and status post left foot fracture.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

Case 1:15-cv-00299-WO-LPA   Document 14   Filed 03/01/16   Page 2 of 19

> 5. [Plaintiff] has the residual functional capacity to perform light work . . ., except he should avoid exposure to hazardous machinery. [Plaintiff] can perform only simple, routine, and repetitive tasks in a low-production occupation, with no complex decision-making, constant change, or dealing with crises. He can have only occasional contact with coworkers and the general public.
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the [] Act, from March 9, 2011, through the date of this decision.

(Tr. 11-19 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

3

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

1 The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

3 "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4 A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly account for Plaintiff's ongoing hallucinations and panic attacks in his RFC" (Docket Entry 11 at 5); and

2) "[t]he ALJ inadequately accounted for Plaintiff's admitted limitations in concentration, persistence and pace in the RFC" and failed to weigh the opinion of consultative examiner Dr. Scott T. Schell (id. at 8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-20.)

**1. Hallucinations and Panic Attacks**

In Plaintiff's first issue on review, he asserts that "[t]he ALJ failed to properly account for Plaintiff's ongoing hallucinations and panic attacks in [the] RFC." (Docket Entry 11 at 5.) In support of that argument, Plaintiff points to his testimony that panic attacks caused him to lose his jobs as a welder and as an assistant manager at Rite Aid, as well as the fact that he suffered panic attacks both before and during the hearing before the ALJ. (Id. (citing Tr. 33-35, 36, 48, 52).) According to Plaintiff, "experiencing a panic attack while at work would force him to leave the work station, and at the very least, take him off task," and "his experience of auditory and visual

8

hallucinations would interfere with his ability to stay on task and perform tasks generally." (Id.) Plaintiff challenges the ALJ's conclusion that medication compliance kept Plaintiff's hallunications and panic attacks under control (id. at 5 (citing Tr. 15)), and argues "that[,] [al]though medications helped his symptoms, they did not disappear and he continued to experience visual and audi[tory] hallucinations as well as panic attacks even when compliant with medications" (id. at 5-6 (citing Tr. 267, 409, 448, 449, 450-51, 514, 750, 776, 788-89)). Plaintiff's contentions do not warrant relief.[5]

The ALJ in this case discussed in detail the medical evidence reflecting Plaintiff's mental health treatment, and noted multiple instances on which Plaintiff's worsening symptoms correlated to his non-compliance with medication and treatment, as well as relapses in substance abuse. (Tr. 15-17; see also Tr. 446 (documenting that Plaintiff had been out of mental health system for three years and lacked medication), 450 (noting Plaintiff without his medication for two weeks), 452 (reflecting that Plaintiff ran out of his medicines one week prior as well as Plaintiff's report that voices

---

5 Plaintiff additionally argues that the ALJ violated Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), and Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), by failing to perform a function-by-function analysis in conjunction with the RFC determination. (See Docket Entry 11 at 6-7.) However, Plaintiff has not identified any contested function (e.g., sitting, standing, walking, pushing, pulling, squatting, crouching, kneeling, crawling, balancing, and reaching) the ALJ neglected to consider, but rather claims the ALJ inadequately considered Plaintiff's symptoms (i.e., hallucinations and panic attacks). (See id. at 5-8.) Accordingly, Plaintiff's reliance on SSR 96-8p and Mascio misses the mark.

and visions respond well to medication and almost go away completely), 456 (indicating Plaintiff had been out of medication for about a week), 771 (stating that Plaintiff missed last appointment and ran out of medications for two weeks), 693 & 725 (reporting Plaintiff's use of marijuana and cocaine two days before inpatient mental health treatment), 776 (recording that Plaintiff lacked his medication).) In light of this evidence, the ALJ concluded that Plaintiff's "signs and symptoms improved and stabilized with medications and therapy, when he was compliant with treatment," but noted that Plaintiff "continued to have some <u>anxiety, paranoia, and problems handling stress</u>." (Tr. 17 (emphasis added).) The ALJ then accounted for those remaining mental symptoms by limiting Plaintiff to simple, routine, and repetitive tasks, as well as precluding work involving significant production demands, complex decision-making, constant change, dealing with crises, or more than occasional contact with others. (<u>Id.</u>)

Plaintiff focuses on the emphasized portion of the ALJ's above-described statement as proof that the ALJ did not include any limitations in the RFC resulting from Plaintiff's hallucinations and panic attacks. (<u>See</u> Docket Entry 11 at 5.) As an initial matter, the ALJ clearly acknowledged Plaintiff's claim that he suffered from some hallucinations and panic attacks, even when compliant with his medications and therapy, both in reiterating

10

Plaintiff's hearing testimony to that effect (see Tr. 14; see also Tr. 35, 49-50, 51-52) and the treatment records documenting Plaintiff's subjective reports of same (see Tr. 15-16; see also Tr. 448 (reflecting continued (but fewer) hallucinations on medication), 409 (documenting reports of panic attacks and hallucinations while on medication)). Significantly, however, the ALJ ultimately found Plaintiff's allegations of his symptoms only partially credible (Tr. 17-18), and Plaintiff has not challenged the sufficiency of the ALJ's credibility determination (see Docket Entry 11 at 5-11). Accordingly, the ALJ has sufficiently explained the basis for the RFC determination, and did not err by failing to expressly include additional limitations resulting from Plaintiff's hallucinations and panic attacks.[6]

---

[6] Plaintiff also challenges the ALJ's findings that Plaintiff "had only mild limitations in his ability to perform activities of daily living and moderate limitation in social functioning." (Docket Entry 11 at 7.) Plaintiff's challenge fails, however, because "activities of daily living" and "social functioning" constitute part of the "B criteria" the ALJ considers at step three of the SEP in determining whether Plaintiff's mental impairments meet or equal a listing. (See Tr. 13 (reflecting ALJ's statement that "[t]he limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the [SEP]".) Although Plaintiff takes issue with the ALJ's findings with respect to his abilities to perform daily activities and function socially (see Docket Entry 11 at 7-8), Plaintiff has not argued that his mental impairments meet or equal any listing (see id. at 5-11) and has therefore not shown how the ALJ's alleged errors in these realms of functioning would affect the outcome of this case, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

11

## 2. Opinion of Consultative Examiner Dr. Schell[7]

According to Plaintiff, although "the ALJ mentioned that Dr. Schell performed a [consultative examination] with [Plaintiff], [the ALJ] never discusse[d] and weigh[ed] Dr. Schell's opinion that . . . [Plaintiff's] ability to perform simple repetitive tasks would be adversely influenced by ongoing symptoms of mixed anxiety and depression, crying spells, obsessive compulsive disorder and suspiciousness of the motivation of others." (Docket Entry 11 at 10 (internal citation omitted) (citing Tr. 15, 340-41).) Plaintiff urges the prejudicial nature of this error for two reasons: 1) "Dr. Schell offered one of the only psychological opinions on record" (id.), where both state agency consultants lacked Plaintiff's medical records and thus found insufficient evidence to make any determination regarding Plaintiff's mental impairments (id.; see also Tr. 80, 94-95, 110, 124-25); and 2) Dr. Schell's opinion conflicts with the ALJ's RFC (Docket Entry 11 at 10 (citing Love-Moore v. Colvin, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished), and Dew ex rel. K.W. v. Colvin, No. 4:12-CV-129-D, 2013 WL 4523617, at *6 (E.D.N.C. Aug. 27, 2013) (unpublished))). Plaintiff's contentions have merit and warrant remand.

---

7 Because the portion of Plaintiff's second assigment of error regarding Dr. Schell warrants remand (for reasons further explained in the discussion above that follows), consideration of Plaintiff's second issue on review will focus on that issue.

12

Under Social Security Administration regulations and rulings, an ALJ must evaluate all medical source opinions, as well as expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion."); Social Security Ruling 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"); Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."); see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence").

13

Dr. Schell performed a mental consultative examination of Plaintiff on March 9, 2011 (see Tr. 338-41), and noted a tremor in Plaintiff's legs and hands, as well as frequent fidgeting of his hands (see Tr. 338, 339). Dr. Schell described Plaintiff's affect as reflecting "underlying tension," and did not feel Plaintiff exaggerated his difficulties. (Tr. 339.) Ultimately, Dr. Schell diagnosed Plaintiff with "[p]osttraumatic stress disorder, chronic, combat-related[,] [o]bsessive-complulsive disorder[,] [g]eneralized anxiety disorder[,] [a]lcohol abuse, in remission[,] and personality disorder, not otherwise specified," and assessed Global Assessment of Functioning ("GAF") scores of "64 within the past year and 60 at present." (Tr. 340.)[8] As a result of these mental impairments, Dr. Schell opined that Plaintiff's "ability to perform simple[,] repetitive task[s] [wa]s adversely influenced by ongoing symptoms of mixed anxiety and depression, crying spells, obsessive-compulsive disorder, and suspiciousness of the motivation of others." (Tr. 341.)

---

8 The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A GAF of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." DSM-IV-R 34 (bold font omitted). A GAF of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id. (bold font omitted). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Here, the ALJ discussed Dr. Schell's evaluation and findings as follows:

> At a March 2011 psychological consultative examination with Scott T. Schell, M.D., [Plaintiff] reported symptoms of sleep pattern disturbance, paranoia, vague hallucinations, obsessive thinking, crying spells, hypervigilance, [and] decreased memory and concentration. He indicated a history of mixed substance abuse but said he had been sober since 2008. Upon examination, [Plaintiff] demonstrated underlying tension. He frequently fidgeted his hands but did not show impulse control problems. [Plaintiff] was able to form a simple relationship with Dr. Schell and sustain concentration. Judgment was normal. Global Assessment of Functioning (GAF) was 60, indicating moderate difficulties in functioning.

(Tr. 15 (internal citations to the administrative transcript omitted).) This discussion does not address Dr. Schell's opinions regarding the impact of Plaintiff's mental impairments on his mental work-related abilities. (See id.) Further, the ALJ subsequently assigned "little weight" to the opinions of consultative medical examiner Dr. Alan Cohen, "limited weight" to the opinions of state agency physician Dakota Cox, M.D., and "little weight" to the opinions of state agency psychological consultants, Michael Hammons, Ph.D., and Daniel Nelson, Psy. D. (Tr. 17), but neglected to indicate if he accepted or rejected Dr. Schell's opinions or to assign a weight to those opinions (see Tr. 17-18). The ALJ's failure to do so violates SSR 96-5p, which provides that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis

15

added)); see also Gordon, 725 F.2d at 235 (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence" (emphasis added)).[9]

Finally, the ALJ's failure to assign a weight to Dr. Schell's opinions does not constitute harmless error. Although an ALJ's failure to weigh a medical source's opinion can amount to harmless error, such as where the plaintiff otherwise fails to show how a proper weighing of the opinion would have altered his or her RFC, see, e.g., Tanner v. Colvin, 602 F. App'x 95, 100-01 (4th Cir. 2015), here, Dr. Schell's opinion that Plaintiff's "ability to perform simple[,] repetitive task[s] is adversely influenced by" his mental symptoms (Tr. 341 (emphasis added)) calls into question the ALJ's determination that Plaintiff remained capable of performing simple, routine, and repetitive tasks (Tr. 13). The ALJ could perhaps explain that he accommodated Dr. Schell's opinion that Plaintiff's mental symptoms adversely influence his ability to perform simple, repetitive tasks by including the additional

---

9 The Commissioner's argument that, due Dr. Schell's use of the phrase "adversely influenced by," "it is not in the first instance clear that Dr. Schell intended to proffer an opinion regarding Plaintiff's functional capacitites" (see Docket Entry 13 at 19 (citing Tr. 341)) lacks merit. Dr. Schell's consultative examination report provides information on the nature and severity of Plaintiff's impairments (see Tr. 340), and the impact of those impairments on Plaintiff's ability to perform mental, work-related activities (see Tr. 341). As such, Dr. Schell's findings and conclusions constitute "medical opinions" within the meaning of the regulations. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.").

16

restrictions in the RFC that Plaintiff not perform work involving significant production demands, complex decision-making, constant change, dealing with crises, or more than occasional contact with others. (See Tr. 13.) However, the ALJ must provide such an explanation in the first instance. See Echols v. Colvin, No. 1:13CV271, 2015 WL 4527046, at *8 (M.D.N.C. July 27, 2015) (unpublished) (remanding due to ALJ's failure to weigh treating source's opinion and noting, "[a]lthough rational reasons may exist for the ALJ to assign substantially less weight to [the treating source's] opinion, the ALJ must explain his reasoning"), recommendation adopted, slip op. (M.D.N.C. Aug. 18, 2015). To the extent the ALJ finds Dr. Schell's opinion that Plaintiff's work-related abilities are "adversely influenced" by his mental symptoms (Tr. 341) too vague to translate into mental functional restrictions, the ALJ can recontact Dr. Schell for clarification of his opinions, see 20 C.F.R. §§ 404.1519p(b), 416.919p(b), or call on the services of a medical expert at the hearing, see 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2)(iii), 416.912(b)(8), 416.927(e)(2)(iii).

In sum, the ALJ's failure to weigh Dr. Schell's opinions constitutes reversible error. In light of the recommendation to remand, and the possibility that the ALJ will reformulate Plaintiff's RFC (or, at least provide a further explanation for the RFC), no need exists to address Plaintiff's remaining issue that

17

the ALJ failed to properly account for Plaintiff's limitations in concentration, persistence, or pace in the RFC. However, after the ALJ's decision in this case, the Fourth Circuit decided Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), which directly addressed the relationship between a moderate limitation in concentration, persistence, or pace and the inclusion of simple, routine, and repetitive tasks and/or unskilled work in the RFC and hypothetical question. Id. at 638. Specifically, the Fourth Circuit held as follows:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.
>
> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's [RFC]. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical question tendered to the [VE]. See id. at 1181. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638.

Given that intervening decision, upon remand, should the ALJ again find that Plaintiff has a moderate limitation in concentration, persistence, or pace, the ALJ must explain how he or

18

she accounted for such a limitation in both the RFC and the hypothetical question(s), if any, to the VE.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, including an explanation of the weight afforded to the opinions of Dr. Schell and, if credited, an explanation of how the RFC (as re-affirmed or modified) accounts for these opinions. To the extent the ALJ deems Dr. Schell's opinions about the adverse impact of Plaintiff's mental impairments on his ability to perform any work activities too ambiguous, the ALJ may seek clarification or additional medical opinion evidence. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 1, 2016